# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| 400 WALNUT ASSOCIATES, L.P. | : | |
| DEBTOR(S) | : | BANKRUPTCY NO. 10-16094 SR |

| | | |
|---|---|---|
| 400 WALNUT ASSOCIATES, L.P. | : | |
| PLAINTIFF(S) | : | |
| VS. | : | |
| | | |
| 4TH WALNUT ASSOCIATES, L.P., | : | |
| IVY REALTY LII, LLC, AND | : | |
| IVY REALTY SERVICES, LLC | : | |
| DEFENDANT(S) | : ADV. NO. 10-0456 | |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

Introduction

Before the Court is the Motion of Defendants, 4th Walnut Associates, L.P. Ivy Realty LII, LLC, and Ivy Realty Services, LLC (hereinafter sometimes collectively referred to as 4th Walnut) to dismiss seven of the eight counts of this Adversary Proceeding. The motion is opposed by the Plaintiff/Debtor. Briefs were submitted and a hearing on the matter was held on February 10, 2011. The Court thereafter took the matter under advisement. For the reasons which follow, the Motion will be granted in part and denied in part.[1]

---

[1]As this matter involves an objection to a claim, it is within this Court's core jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B) (designating as "core," allowance or disallowance of claims

(continued...)

Summary of Holding

Count I - Breach of Contract (Plaintiff against 4th Walnut)

• Basis for Contention: Count I is barred by the Statute of Frauds and, alternatively fails to allege the required elements of a contract.

• Holding: Count I will be dismissed.

Count II - Breach of Oral Contract (Plaintiff against 4th Walnut)

• Basis for Contention: Count II is barred by the Statute of Frauds and, alternatively, fails to allege the required elements of a contract.

• Holding: Count II will be dismissed.

Count III - Breach of Duty of Good Faith and Fair Dealing
(Plaintiff against 4th Walnut)

• Basis for Contention: Count III fails to allege an underlying contract.

• Holding: Count III will be dismissed.

Count IV - Negligence (Plaintiff against 4th Walnut)

• Basis for Contention: The gist of Count IV is a contract and not a tort claim, and it must therefore be dismissed.

• Holding: Count IV will be dismissed.

Count V - Declaratory Judgment (Plaintiff against 4th Walnut)

• Basis for Contention: The requested relief is not within the scope of the Declaratory Judgment Act.

• Holding: Count V will be dismissed.

Count VI - Intentional Interference with Existing Contractual Relations

---

[1](...continued)
against the estate)

(Plaintiff against all Defendants)

• Basis for Contention: There is no existing contract with which Defendants
could have interfered.

• Holding: Count VI will be dismissed because the Complaint fails to allege
an existing contractual relationship.

Count VII - Intentional Interference with Prospective Contractual Relations
(Plaintiff against all Defendants)

• Basis for Contention: There was no prospective contract with which
Defendants could have interfered.

• Holding: The Motion to Dismiss Count VII will be denied because the
Plaintiff has sufficiently stated this cause of action against all Defendants.

Standard Required
for Stating a Claim

The Motion is premised on F.R.C.P. 12(b)(6)[2]; to wit, that the Complaint fails to

state a claim upon which relief can be granted.  In order to survive a motion to dismiss,

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.' "Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937,

1949, 173 L.Ed.2d 868 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570,

127 S.Ct. 1955, 1574167 L.Ed.2d 929 (2008)); see also Fowler v. UPMC Shadyside, 578

F.3d 203, 210 (3d Cir.2009) (explaining that pleading standards have seemingly shifted

from simple notice pleading to a more heightened form of pleading, requiring a plaintiff

to plead more than the possibility of relief to survive a motion to dismiss).  The

Supreme Court explained that although factual allegations are to be accepted as true

---

[2]Made applicable to adversary proceedings by B.R. 7012(b).

for purposes of legal sufficiency, the same does not apply to legal conclusions;

therefore, the factual allegations must sufficiently support the legal claims asserted.

Iqbal, 129 S.Ct. at 1949, 1950. "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing

Twombly, 550 U.S. at 555); see also Fowler, 578 F.3d at 210; and Phillips v. County of

Allegheny, 515 F.3d 224, 231 (3d Cir.2008).

Counts I and II - Breach of Contract
and Breach of Oral Contract

The first count alleges that the Defendants breached an agreement (the

Forbearance Agreement) which the Debtor had reached with 4th Walnut's predecessor in

interest, Sovereign Bank ("Sovereign").  In Count Two the Plaintiff contends that if the

Court finds that the forbearance agreement was insufficiently memorialized, it should

find there was nevertheless a breach of an oral forbearance agreement.[3]  Debtor refers

in each instance to an alleged Forbearance Agreement discussed in the Court's previous

Opinion in this action, In re 400 Walnut Associates, L.P., 2011 WL 915328

(Bankr.E.D.Pa. February 22, 2011).  The Debtor continues to rely on this allegation

herein, while 4th Walnut (and the other Defendants to this adversary proceeding) again

disavow the existence of any such arrangement.  The importance of the alleged

Forbearance Agreement to this proceeding, as well as to the recent ruling on cash

collateral, cannot be overstated.  The Debtor's claim that it reached an accord with

---

[3]Indeed, that is the sole difference between the two counts: the forbearance agreement described in paragraphs 72 and 73 of count II is "oral." Otherwise, the two counts are essentially the same.

Sovereign is the common thread which runs through five of the eight counts of its

complaint.[4]  If the Debtor is unable to sufficiently allege the existence of an enforceable

contract with Sovereign, all five counts must be dismissed.  Put differently, the Court's

finding on the question of whether an enforceable forbearance agreement has been

stated will apply to all of the counts which are premised on it.

In its previous Opinion, the Court noted that it would take up in this proceeding

4th Walnut's challenges to the claim that a forbearance agreement ever existed.  In this

respect 4th Walnut argues that the Debtor's claims of a forbearance agreement are

barred by the Statute of Frauds or are insufficiently pleaded.   With regard to the latter

argument, 4th Walnut cites two deficiencies: 1) that the parties never agreed on all

essential terms, and 2) that there was no exchange of legally sufficient consideration.

The Court turns to those questions.

Statute of Frauds

In Pennsylvania, the common law Statute of Frauds is codified at 33 P.S. § 1:

> From and after April 10, 1772, all leases, estates, interests of
> freehold or term of years, or any uncertain interest of, in, or
> out of any messuages, manors, lands, tenements or
> hereditaments, made or created by livery and seisin only, or
> by parol, and not put in writing, and signed by the parties so
> making or creating the same, or their agents, thereunto
> lawfully authorized by writing, shall have the force and effect
> of leases or estates at will only, and shall not, either in law
> or equity, be deemed or taken to have any other or greater
> force or effect, any consideration for making any such parol

---

[4]Count I (Breach of Contract), Count II (Breach of Oral Contract), Count III (Breach of
Duty of Good Faith/Fair Dealing), Count V (Declaratory Judgment), and Count VI (Intentional
Interference with an Existing Contract).

> leases or estates, or any former law or usage to the contrary
> notwithstanding; except, nevertheless, all leases not
> exceeding the term of three years from the making thereof;
> and moreover, that no leases, estates or interests, either of
> freehold or terms of years, or any uncertain interest, of, in,
> to or out of any messuages, manors, lands, tenements or
> hereditaments, shall, at any time after the said April 10,
> 1772, be assigned, granted or surrendered, unless it be by
> deed or note, in writing, signed by the party so assigning,
> granting or surrendering the same, or their agents, thereto
> lawfully authorized by writing, or by act and operation of
> law.

The Statute of Frauds requires "a memorandum in writing signed by the parties to be charged which sufficiently indicates the terms of the contract and the property to be conveyed." Brown v. Hahn, 419 Pa. 42, 51, 213 A.2d 342, 347 (1965). Its aim "is the prevention of successful fraud by inducing the enforcement of contracts that were never in fact made. It is not to prevent the performance or the enforcement of oral contracts that have in fact been made." In re Estate of Beeruk, 429 Pa. 415, 418-19, 241 A.2d 755, 758 (1968) quoting 2 Corbin, Contracts § 498 at 680-81 (1950). It eschews exalting "informality in the memorandum or its incompleteness in detail [which] neither promotes justice nor lends respect to the statute." Axler v. First Newport Realty Investors, 279 Pa.Super. 14, 420 A.2d 720, 722 (Pa.Super.1980) citing Beeruk, supra. Accordingly "some note or memorandum' that is adequate ... to convince the court that there is no serious possibility of consummating fraud by enforcement" will place the claim outside the statute of frauds. Id.

The Statute of Frauds has been held applicable to bar oral forbearance agreements regarding real estate. See Eastgate Enterprises, Inc. v. Bank and Trust

6

Company of Old York Road, 236 Pa. Super. 503, 508, 345 A.2d 279, 281

(Pa.Super.1975) citing Second National Bank of Uniontown, v. Hustead, 334 Pa. 421,

423, 6 A.2d 63, 64 (1939); see also Atlantic Financial Federal v. Orianna Historic

Associates, 406 Pa.Super. 316, 319, 594, A.2d 356, 357 (Pa.Super. 1991); Horanic v.

Westmoreland County Tax Claim Bureau, 1992 WL 510284 at *1 (Pa.Com.Pl. March 5,

1992); Strausser v. Pramco, III, 944 A.2d 761, 765 (Pa.Super.2008); and Hansford v.

Bank of America, 2008 WL 4078460, at *13 (E.D.Pa. August 22, 2008)

    The Debtor must accordingly allege the existence of some writing which

demonstrates an intent to forbear on Sovereign's (and by succession, 4th Walnut's) part.

On this score the Debtor points, principally, to two sets of documents: certain January

29, 2010, letters to the Debtor's subtenants, and a state court docket reflecting the

suspension of a mortgage foreclosure action.  Sovereign's intention and agreement to a

forbearance is further confirmed, says the Debtor, by three other letters (attached as

Ex. D, E, and F) pursuant to which the Debtor accounted for rents collected, expenses

paid, and net rents remitted to Sovereign; which, says the Debtor, was in keeping with

the parties' agreement.  Collectively, this is more than enough, the Debtor argues, to

satisfy the Statute of Frauds.[5]

    4th Walnut, for its part, ascribes little significance either to the January 29 letters

---

[5]Although Debtor is relying here on independent documents to plead that there is an
agreement "in writing," these documents may be considered in a motion to dismiss because
they are attached to the Complaint.  See Steinhardt Group v. Citicorp, 126 F.3d 144, 145 n.1
(3d Cir. 1997) (explaining that in ruling on a motion to dismiss, Court may consider documents
attached to Complaint).

or to the foreclosure abeyance.  It reads the tenant letters as intended for no other

purpose than to give clear instruction (i.e., "to allay confusion") to the subtenants as to

where to send their rent checks.  Nothing, it stresses, is said in the tenant letters as to

how the relationship between Sovereign and the Debtor is altered.  As far as

discontinuing foreclosure, there is no indication, says 4th Walnut, upon what terms or

for what reason that decision was made.  The sum of all this, 4th Walnut argues, is, at

best, part performance.  That would suffice for Statute of Frauds purposes only where a

sale or lease of land is involved and the party seeking to avoid the doctrine's preclusive

effect is in actual possession of the land in question.  See 4th Walnut's Brief, at 16 citing

Kurland v. Stoker, 516 Pa. 587, 592, 533 A.2d 1370, 1373 (1986).  This case, 4th

Walnut argues, does not involve such facts and accordingly, it maintains, the Plaintiff's

case is barred.

    The most recent case to address this precise question explains that the "writing

requirement of the Statute of Frauds can be satisfied by the amalgam of multiple

documents:"

> The Statute of Frauds is satisfied by the existence of a
> written memorandum signed by the party to be charged and
> sufficiently indicating the terms of the oral agreement so
> that there is no serious possibility of consummating fraud by
> its enforcement. Keil v. Good, 467 Pa. 317, 356 A.2d 768
> (1976). Any number of documents can be taken together to
> make out the necessary written terms of the bargain
> provided there is sufficient connection made out between
> the papers, without the aid of parol evidence, further than to
> identify papers to which reference is made, but not to supply
> a material term of the contract. Volume 4, Williston on
> Contracts, Third Edition, page 128. See also Dvorak v. Beloit

8

> Corp., 65 Pa.D. & C.2d 514 (Chester 1974). The purpose of
> the Statute of Frauds is to prevent the enforcement of
> unfounded fraudulent claims by requiring that contracts
> pertaining to interests in real estate be supported by written
> evidence.

Strausser, supra, 944 A.2d at 765 quoting Haines v. Minnock Construction Co., 289

Pa.Super. 209, 215, 433 A.2d 30, 33 (1981).

As measured against the foregoing, the Court concurs with 4th Walnut that the

collective documentation in this case simply does not make out the necessary terms of

the alleged bargain.  The failure of the January 29 letters to mention forbearance or

other agreement is noteworthy.  Likewise, the fact that Sovereign's own June 17 letter

expressly disavows any forbearance agreement is somewhat persuasive, although not

conclusive.  4th Walnut's Brief, 14, bullet points 1 and 2.   At that time, Sovereign was in

negotiations with 4th Walnut to sell the loan.  One would have expected Sovereign to

warrant that the loan was not subject to any forbearance for current defaults.  Id. bullet

point 4.  A purchaser of such a loan would be unlikely to take it subject to defenses.

Finally, the Court sees some significance in the fact that the Debtor's own July 7 letter

characterizes its purported accord with Sovereign as, at best, an oral forbearance

agreement.  4th Walnut's Brief, 13.  The July 7 letter refers to an agreement allegedly

reached at a January meeting.  It was Debtor's understanding that Sovereign's counsel

would later put that agreement to writing.  That apparently just never happened, and

so by July 7 the accord which counsel refers to in his letter remained unwritten.  That

does not mean, of course, that the Debtor's recollection is simply a fiction.  Indeed,

matters may very well have unfolded exactly as the Debtor recalls.  Moreover, in this

context, the Debtor is entitled to the benefit of all doubts.  Accordingly, a particularly

close examination of the documents at issue is warranted.  The Debtor's "proof" cannot

withstand such scrutiny.

The documents upon which the Debtor relies to establish the requisite "writing"

for purposes of surmounting the Statute of Frauds are simply too incomplete.   The

January 29 letters do not include any other terms of the alleged forbearance

agreement.  The letters might serve to establish just one alleged term, i.e., the

redirection of the rents.  But once again, and importantly, the letters recite only that

they were being sent to allay confusion.  There is no mention of them being sent in

furtherance of a forbearance agreement.  Neither does the docket entry indicating the

discontinuation of the foreclosure action support much.  The reasons for the

discontinuance of the action and the specific terms which prompted the foreclosure

abeyance are missing and can only be guessed at.  The Debtor may have pleaded all of

the terms of the purported agreement as it saw them, but the Debtor's version is

strenuously disputed and there exists no writing to confirm all that the Debtor maintains

was agreed upon.  This is why the Statute of Frauds exists.  What is in writing here is

circumstantial, and while one might reasonably infer an agreement of some type from

this documentary evidence, it is simply not enough to legally establish the contours of

the agreement.[6]  In short, Plaintiff's claim of a forbearance agreement  does not

surmount the Statute of Frauds, and that claim, together with those predicated on it,

must fail.

The Elements of a Contract

While the foregoing ruling renders consideration of 4th Walnut's alternative

arguments unnecessary, in the interest of completeness the Court will address them.

4th Walnut contends, alternatively, that aside from the failure to sufficiently memorialize

the alleged agreement as required by the Statute of Frauds, the Complaint fails more

fundamentally to allege any enforceable contract.  The Debtor counters that it is not

seeking to enforce the alleged forbearance agreement, but only to recover damages

resulting from Sovereign's breach of the oral accord.  Debtor's Brief, 31-32.  This seems

really to be just a semantical distinction: there can be no damages without a contract in

the first place.  On this score, 4th Walnut argues  that any such claim of forbearance,

written or otherwise, lacks the necessary elements of an enforceable contract.  4th

Walnut gives two reasons why the allegations are insufficient.  First, there is no

allegation of a meeting of minds, given the lack of documentation offered by the

Debtor.  Second, there is also a lack of consideration flowing from the Debtor.  4th

Walnut has the better part of the argument.

The basic elements of an enforceable contract are three: the parties must reach

---

[6]Neither is Debtor helped by the Sovereign bank account statement which include
default interest and late charges and the Sovereign loan payment history which shows the
same after January 2010.  *See* Ex. I and O.

a mutual understanding, exchange consideration, and delineate the terms of the

bargain with sufficient clarity.  Foreman v. Chester-Upland School District, 941 A.2d

108, 114 (Pa.Comwlth 2008) citing Weavertown Trans. Leasing v. Moran, 834 A.2d

1169, 1172 (Pa.Super. 2003).  "[T]he formation of a contract requires a bargain in

which there is a manifestation of mutual assent to the exchange and consideration."

Restatement (Second) of Contracts §17(1) (1979). When there is lack of manifested

intent or consideration, a contract does not exist.  Estate of Beck, 489 Pa. 276, 282,

414 A.2d 65, 68 (1980); Lawrence v. Walker, 2009 WL 5248560 (Pa.Com.Pl. 2009)  In

this regard, 4th Walnut contends that the parties neither reached a meeting of the minds

on all terms of their agreement, nor exchanged legally sufficient consideration.  4th

Walnut's Brief, 18-22.

The contract which the complaint asserts is the alleged agreement to forbear

arising out of the January 29 meeting between the Debtor and Sovereign Bank.  The

relevant allegations are restated below:

> 25.  On January 29, 2010, representative of the Debtor,
> John J. Turchi, Jr. (Mr. Turchi") and Debtor's counsel, Aris J.
> Karalis, met at the offices of counsel for Sovereign Bank,
> Bonnie Golub, who participated in person and participating
> by phone was Ed Meditz, Vice-President of Sovereign Bank
> and Robert M. Craig, Senior Vice-President, National
> Commercial Real Estate, Sovereign Bank.  The meeting
> resulted in an oral agreement (the "Forbearance
> Agreement").  Sovereign Bank's counsel was to reduce the
> forbearance Agreement to writing.
>
> 26.  Under the Forbearance Agreement, the Debtor was to
> continue to collect the rents from the Property each month,

pay the expenses associated with the Property and remit to
Sovereign Bank the net funds after payment of the expenses
for the Property.  Further, interest was to be charged at the
contract rate and not at the default rate and both the late
charges and the prepayment penalty were to be waived.
The term of the Forbearance Agreement was to continue
until the maturity date of the loan, which was March 1, 2011
and the Foreclosure Complaint was to be withdrawn.

27.  In accordance with the Forbearance Agreement, later in
the day on January 29, 2010, Sovereign Bank's counsel and
a representative of the Debtor jointly signed letters that
were hand delivered to all of the tenants residing at the
Property directing the tenants to remit their rents to 400
Walnut Greentree Associates, L.P. pursuant to the terms of
their respective leases.

28.  Also, in accordance with the Forbearance Agreement,
Sovereign Bank took no further action with the Foreclosure
Complaint.  A review of the Court of Common Pleas docket
for the foreclosure action reveals that Sovereign Bank took
no further action in connection with the Foreclosure
Complaint after it reached the Forbearance Agreement.

Complaint, ¶¶ 25-28.

The allegations state who was at the meeting, what was agreed upon, who was

to collect the rents and pay the expenses, what rate of interest would be charged, how

long this agreement would last, and that foreclosure would cease.  These allegations

are clear and quite specific.  While it is alleged that the agreement was supposed to

have been put in writing, it never was.  Other documents, however, tend to confirm at

least two of the alleged terms: to whom the tenants should send their rent checks and

that the bank would cease the foreclosure action.  The terms of the accord as alleged

13

are sufficiently plead.  The Court disagrees with 4th Walnut's insistence that the Debtor's

characterization of the alleged agreement as one reached "in principle" is an admission

of incompleteness.  "When business people use [the term] 'agreement in principle,' it

means that the parties have reached a meeting of the minds with only details left to be

resolved." American Fin. Serv. Group v. Treasure Bay Gaming & Resorts, Inc., 2000 WL

815894, at *9 (S.D.N.Y. June 23, 2000); accord Provident American Corp. v. Loewen

Group Inc ., 1995 WL 105483, at *5 (E.D.Pa. Mar. 10, 1995) (explaining that where the

parties have settled upon the essential terms of the contract, and the only remaining

act to be done is the formalization of the agreement, the latter is not inconsistent with

the existence of a present contract).  In other words, details and essential terms are

very different things.  The Court reads the Debtor's allegations to sufficiently plead a

present contract: at their face-to-face meeting, the parties agreed on the salient points

to resolve their dispute and intended to later put them into writing.  That the writing

would not come to be does not mean that the parties did not agree on the terms

necessary to form a contract.  Construing these well plead allegations as true, the

Debtor survives this challenge.

Consideration

However, while the Complaint may sufficiently allege the requisite state of mind

for a contract, the same cannot be said for what was exchanged.  It is fundamental

hornbook law that consideration is a bargained-for exchange, evidenced by a benefit to

the promisee and a detriment to the promisor.  Estate of Beck, 489 Pa. 276, 282, 414

14

A.2d 65, 68 (1980); 3 Williston on Contracts, § 7:2 (4th ed.); Jamison v. Kiwi Brands

Inc., 50 Pa. D. & C.3d 12, 13, 1988 WL 167321, at *2 (Pa.Com.Pl. November 2, 1988);

see also Restatement (Second) of Contracts § 71 (explaining that a performance or

return promise is if it is sought by the promisor in exchange for his promise and is given

by the promisee in exchange for that promise).   Restatement § 71 goes on to provide

that performance may consist of an act other than a promise, forbearance, or the

creation, modification or destruction of a legal relationship.   Offering to perform a pre-

existing legal duty, i.e., something one is already bound to do, does not constitute

consideration.   See Vitow v. Robinson, 823 A.2d 973, 977 (Pa.Super.2003) quoting

Restatement (Second) Contracts § 73 ("performance of a legal duty owed to a promisor

which is neither in doubt nor the subject of an honest dispute is not consideration ...");

Peoples Mortgage Co., Inc. v. FNMA, 856 F.Supp. 910, 924 (E.D.Pa.1994)

("Performance of that which one is already legally obligated to do is not consideration

sufficient to support a valid agreement.") quoting Cohen v. Sabin, 452 Pa. 447, 453,

307 A.2d 845, 849; accord, In re Commonwealth Trust Co., 357 Pa. 349, 354, 54 A.2d

649, 651 (1947); Warren Tank Car Co. v. Dodson, 330 Pa. 281, 285, 199 A. 139, 141

(1938); Blaisdell Filtration Co. v. M.L. Bayard & Co., 311 Pa. 6, 9, 166 A. 234, 235

(1933); Crown v. Cole, 211 Pa.Super. 388, 392, 236 A.2d 532, 534 (1967).   It is 4th

Walnut's position that the forbearance agreement, as alleged in the Complaint, created

no new obligations on the Debtor's part.   The Court agrees.

   According to what is alleged, the parties agreed that the Debtor would resume

15

collecting the rents, pay the expenses of the property and remit net rents to Sovereign.

Yet all of this the Debtor was already required to do.  See Multi Family Mortgage, § 3(b),

second sentence.[7]  Sovereign also is alleged to have agreed that the interest rate would

go back to the contract rate, late charges would be waived and the maturity date of

March 1, 2011 returned to what it was originally under the loan.  Clearly all of that does

nothing more than restore the Debtor to the status quo ante its breach.  Far from

constituting any concession on Debtor's part, it is more the other way around.

Accepting the Complaint's characterization of what occurred at the January 29 meeting

as true— which the Court must for purposes of this motion— the Court can discern no

benefit Sovereign received from its alleged forbearance.  The Debtor never really

addresses this point, focusing instead on the consideration which flowed from Sovereign

to the Debtor.  4th Walnut agrees, however, that Sovereign's forbearance would

constitute consideration.  What 4th Walnut contests is whether the Complaint alleges

that the Debtor gave Sovereign anything in exchange for that forbearance.[8]  The

---

[7]The mortgage is attached as an exhibit to the foreclosure suit which, in turn, is attached
as Ex. A to this Complaint.

[8]Ironically, at a prior hearing the Debtor's principal conceded this very point:

> Q: You said you agreed to do several things with Sovereign,
> correct?
> A: [No verbal response]
> Q: You listed a whole host of them: Pay the rents–
> A: Yes, yes.
> Q: ... In your view, are any of those things different than what the
> debtor was already obligated to do?
> A: No.

(continued...)

Complaint is of no help on this pivotal issue.  The Court, therefore, finds a lack of

consideration to support the Debtor's claim of a forbearance agreement with Sovereign,

and with 4th Walnut by succession.  The corollary to that finding is that the forbearance

agreement as alleged is unenforceable.  That being the case, both Counts I and II fail

to state a claim upon which relief may be granted.

Count III- Breach of Implied Covenant of
Good Faith and Fair Dealing

As previously noted, the finding that the Complaint fails to plead an enforceable

contract matters greatly to the remaining counts.  A number of them are premised upon

the existence of a contract.  Absent allegations of an enforceable agreement, they must

necessarily fail.  The first of these counts is Count III.  It alleges a violation of the

covenant of good faith and fair dealing implied in contractual relations.  In

Pennsylvania, there is no free-standing claim for breach of good faith.  Rather, "[i]n

order to plead a cause of action for breach of the covenant of good faith, whether it is

an express or implied covenant, a plaintiff must properly plead the elements of a claim

of breach of contract."  CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co., 645

F.Supp.2d 354, 369 (E.D.Pa.2009) (quoting Sheinman Provisions, Inc. v. Nat'l Deli LLC,

2008 U.S. Dist. LEXIS 54357, at *3, 2008 WL 2758029 (E.D.Pa. July 15, 2008)).  Under

this standard, "a plaintiff must allege facts to establish that a contract exists or existed,

---

[8](...continued)
Transcript of Hearing, 12/9/10, p.62-63.

including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract other than the covenant of good faith and fair dealing, and that resultant damages were incurred by plaintiff." Id.  The parties both agree on this.  See 4th Walnut's Brief, 27; Debtor's Brief, 41.

The allegation of an enforceable contract is a sine qua non for a cause of action for breach of implied covenant of good faith and fair dealing.  The failure to plead an enforceable contract is thus dispositive as to Count III and it, too, must be dismissed.

Count IV - Negligence

The next count purports to be a tort claim.  It is alleged in Count IV that 4th Walnut was negligent in the handling of the Sovereign loan.  The dereliction is alleged to consist of a "recharacterization of the amounts paid to Sovereign." (¶ 86) and the "retroactive reconfiguration" of the amounts Debtor owes on that loan (¶ 87).  4th Walnut sees two shortcomings here.  First, it says, Count IV is nothing more than a repackaging of the Debtor's contract claims into a tort action.  It relies here on what Pennsylvania law calls the "gist of the action" doctrine.  4th Walnut's Brief, 24-25. Second, 4th Walnut maintains the count is flawed because a negligence claimant may not recover for economic loss.  Id. 26.  Debtor's response, in sum, is that because this tort claim is based on alleged interference with the forbearance agreement, dismissal would be premature. Debtor's Brief, 37-38.  As to the incongruity between a negligence claim and economic loss, the Debtor argues that the "economic loss" doctrine is limited

18

to products liability cases.  Id., 40.

There is much to 4th Walnut's first argument that Pennsylvania decisional law is trending towards recognizing the "gist of the action" doctrine.  However, what stands out in Count IV are the alleged damages.  Paragraph 86 states that 4th Walnut was negligent in its "recharacterization of the amounts paid to Sovereign by the Debtor."  It is hard to know—exactly—what this means.  Perhaps 4th Walnut is being charged with not having credited the Debtor for all payments made.  Assuming that this is what is meant, and that it is true, then it is hard to see how the Debtor was harmed as a result.  It is undeniable that the Debtor remains in possession of the property.  More importantly, Count VIII of the Complaint, i.e., the Debtor's Objection to 4th Walnut's Proof of Claim, remains extant.  The proper calculation of the outstanding indebtedness will not be passed over.[9]  For these reasons, Count IV will be dismissed.

Count V - Declaratory Judgment

Unlike the previous four counts, Count V does not seek a monetary award.  Instead, it asks the Court for declaratory relief.  Based on 4th Walnut's alleged breach of contract, negligence and breaches of duty of good faith and fair dealing, the Debtor maintains that it should be absolved of any liability for amounts due under the loan.  4th Walnut argues that such relief is not provided for by the declaratory judgment statute.

Although the Complaint does not state the statutory predicate for the declaratory

---

[9]Paragraph ¶ 87 charges 4th Walnut with negligent "retroactive reconfiguration" of the amounts due under the loan.  That seems basically to be the same thing that is alleged in ¶ 86; i.e., incorrect arithmetic.   Again, the Proof of Claim count will cover this.

relief,[10] federal courts, including bankruptcy courts, may grant such relief pursuant to

the Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201.  That Act provides, in

relevant part, that "[i]n a case of actual controversy within its jurisdiction, ... any court

of the United States,[11] upon the filing of an appropriate pleading, may declare the rights

and other legal relations of any interested party seeking such a declaration, whether or

not further relief is or could be sought." 28 U.S.C. § 2201.  When there is an actual

controversy between the parties, the Act allows a court to settle the parties' respective

_____

[10]In their briefs, both parties cite the Pennsylvania Declaratory Judgment Act.
Pennsylvania is one of 43 states to have adopted the Uniform Declaratory Judgment Act.  *See*
42 P.S. Pt. VII Ch. 75.  The act provides that "[c]ourts of record, within their respective
jurisdictions, shall have power to declare rights, status, and other legal relations whether or not
further relief is or could be claimed." 42 P.S. § 7532.  As pertains to the case *sub judice*, the act
also provides that "[a]ny person interested under a deed, will, written contract, or other writings
constituting a contract, or whose rights, status, or other legal relations are affected by a statute,
municipal ordinance, contract, or franchise, may have determined any question of construction
or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a
declaration of rights, status, or other legal relations thereunder."  42 P.S. § 7533.  The
Pennsylvania act serves much the same purpose as the federal act.  The purpose of awarding
declaratory relief is to settle and make certain rights or legal status of parties.  *Geisinger Clinic
v. Di Cuccio*, 606 A.2d 509, 519, 414 Pa.Super. 85, 104 (Pa.Super.1992), appeal denied 637
A.2d 285, 536 Pa. 625, reconsideration denied, certiorari denied 115 S.Ct. 904, 513 U.S. 1112,
130 L.Ed.2d 788; *see also Curtis v. Cleland*, 552 A.2d 316, 318, 122 Pa.Cmwlth. 328, 331
(Pa.Cmwlth.1988) (explaining that the Declaratory Judgments Act is remedial in nature and is
intended to provide relief from uncertainty and establish various legal relationships).  A
declaratory judgment is not appropriate to determine rights in anticipation of events that may
never occur, but is appropriate where there is imminent and inevitable litigation.  *Pennsylvania
Turnpike Com'n v. Hafer*, 597 A.2d 754, 756,142 Pa.Cmwlth. 502, 507 (Pa.Cmwlth.1991);
*Shaffer-Doan ex rel. Doan v. Com., Dept. of Public Welfare*, 960 A.2d 500, 517 (Pa.Cmwlth.
2008) ("Declaratory judgments are nothing more than judicial searchlights, switched on at the
behest of a litigant to illuminate an existing legal right, status, or other relation, and they may
not be used to search out new legal doctrines.")  *Crown Cork & Seal Co., Inc. v. Borden, Inc.*,
779 F.Supp. 33, 34 (E.D.Pa.1991) (inasmuch as request for declaratory relief constituted
"procedural fencing" and litigation costs manufacturer sought to avoid by suit were not the type
of "uncertainty and insecurity" that Acts were intended to relieve); 11 *Standard Pa. Prac.* 2d §
66:4.

[11]"Courts of the United States" are defined at 28 U.S.C. § 451.  District Courts are
included within that definition.  Because this Court is a unit of the District Court, it is a "court of
the United States."  In re Amatex, 107 B.R. 856, 862-863 (Bankr.E.D.Pa.1992)

rights, even before there is a violation of law, exercise of right, or breach of duty.  In re

Downingtown Indus. & Agr. School, 172 B.R. 813, 819 (Bankr.E.D.Pa.1994)   See, e.g.,

Océ- Office Systems, Inc. v. Eastman Kodak Co., 805 F.Supp. 642, 646 (N.D.Ill.1992)

("Resolving the uncertainty and anxiety resulting from a looming lawsuit is, indeed, the

purpose of the Declaratory Judgment Act.").   A declaratory judgment may well be

appropriate in the context of a contract dispute even before an actual breach of the

contract occurs.  See, e.g., Hardware Mutual Casualty Co. v. Schantz, 178 F.2d 779,

780 (5th Cir.1949) ("The purpose of the Declaratory Judgment Act is to settle 'actual

controversies' before they ripen into violations of law or a breach of some contractual

duty."); American Type Founders, Inc. v. Lanston Monotype Machine Co., 137 F.2d 728,

729 (3d Cir.1943) (court "entertain[ed] no doubt that an actual controversy exist[ed]

within the purview of the Declaratory Judgment Act" where plaintiff sought declaration

of right to cancel contract while defendant sought its enforcement);  Lehigh Coal &

Navigation Co. v. Central R.R. N.J., 33 F.Supp. 362, 365 (E.D.Pa.1940) ("Construction

and interpretation of written instruments ... is the principle function of a declaratory

judgment proceeding.").

        The Act is intended to address uncertainty as to legal rights between the parties

towards expediting a conclusion of a pending dispute or avoiding one altogether.  The

problem for the Debtor is that such purpose can hardly be served here and now.  The

parties here are already engaged in litigation.  The parties are past the point where a

declaratory judgment action can serve a prophylactic purpose.  Even if the Complaint

set forth the operative predicates for such a request, that is not what the declaratory

relief statute is for.  The statute is a means to an end, not the end in itself.  The only

question that might call out for clarification would be whether the January 29 meeting

between the Debtor and Sovereign resulted in an enforceable modification of their loan

agreement.  The Court has answered that question herein, at least based on the

Debtor's allegations.  The request for declaratory relief in this matter is inappropriate.

Accordingly, Count V will be dismissed.

Counts VI and VII - Intentional
Interference with Contract

The last two counts which 4th Walnut challenges are based in tort.  The two

claims are identical save for one important distinction: Count VI charges the Defendants

with harming an existing contractual relationship (i.e, the alleged forbearance

agreement between the Debtor and Sovereign);  Count VII does not assume the

existence of an enforceable agreement, but instead alleges that preliminary discussions

were tending towards an agreement when the Defendants put a stop to that.  Under

Pennsylvania law, the elements of a cause of action for intentional interference with a

contractual relation, whether existing or prospective, are: (1) the existence of a

contractual, or prospective contractual relation between the complainant and a third

party; (2) purposeful action on the part of the defendant, specifically intended to harm

the existing relation, or to prevent a prospective relation from occurring; (3) the

absence of privilege or justification on the part of the defendant; and (4) the

occasioning of actual legal damage as a result of the defendant's conduct.  Strickland v.

University of Scranton, 700 A.2d 979, 985 (Pa.Super.1997) (citations omitted).  The

Supreme Court of Pennsylvania has expressly adopted the Restatement (Second) of

Torts § 766 which states that a necessary element of this tort is improper conduct by

the alleged tortfeasor.  See Adler Barish, supra, 482 Pa. at 431, 393 A.2d at 1183.

Existing Contract

 Count VI is premised on the forbearance agreement being a "valid, enforceable

contract between the Debtor and Sovereign Bank."  ¶ 94.  The Court, however, has

already found that the Complaint fails to allege a binding contract either because the

claim is barred by the Statute of Frauds or, if not, because there is a failure of

consideration.  Therefore, Count VI must be dismissed.

Prospective Contractual Relationship

 That leaves Count VII and the claim that the Debtor and Sovereign would have

reached an accord, i.e, a prospective contractual relationship, but for the actions of the

Defendants.

 4th Walnut concedes that a prospective contractual relationship is not based on

an existing contractual right.  4th Walnut Brief, 33.  At the same time, however, it

argues that it must be grounded in the reasonable likelihood or probability of one.  Id.

(emphasis in original).  Courts struggling over the question of what a prospective

contractual relationship is have sometimes relied on the following explanation:

> But anything that is prospective in nature is necessarily
> uncertain. We are not here dealing with certainties, but with
> reasonable likelihood or probability. This must be something
> more than a mere hope or the innate optimism of the

23

> salesman. ... This is an objective standard which of course
> must be supplied by adequate proof.

Glenn v. Point Park College, 441 Pa. 474, 477, 272 A.2d 895, 897 (1971).  See also

Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (1979) (explaining that to be

"prospective, a contractual relation must have objectively appeared to be reasonably

probable); see also InfoSAGE, Inc. v. Mellon Ventures, L.P., 896 A.2d 616, 627-628

(Pa.Super. 2006) (citing both Glenn and Thompson Coal); and see also Kelly-Springfield

Tire Co. v. Ambro, 408 Pa.Super 301, 309, 596 A.2d 867, 871 (Pa.Super. 1991) (noting

that prospective contractual relations are, by definition, not as susceptible of definite,

exacting identification as is the case with an existing contract with an existing person);

Hydrair, Inc. V. National Environmental Balancing Bureau, 2001 WL 1855055, at *6

(citing Kelly-Springfield on same point).  Plaintiff's Count VII is thus not required to

allege an existing contract.

Paragraph 102 states that "[i]n the event the Forbearance Agreement is

determined not to be a valid, enforceable contract between the Debtor and Sovereign

Bank, a prospective contractual relationship existed between the Debtor and Sovereign

Bank."  From there, ¶ 103 alleges that the Defendants had knowledge of this

prospective contractual relationship between the Debtor and Sovereign Bank.  There is

no express allegation within Count VII itself which supports the claim of a prospective

contractual relation.  But it can be found in preceding paragraphs which are

incorporated by reference.  Paragraph ¶ 29 of the Complaint alleges what happened

after the January 29 meeting: the Debtor provided on a monthly basis the net funds

24

remaining after payment of the expenses for the Property to Sovereign.  The Debtor

continued to ask for a draft of the forbearance agreement and in March 2010 was

allegedly assured on more than one occasion that a draft would be forthcoming.  See

¶¶ 30-33.  From the Debtor's point of view, it appeared that a written agreement could

be expected in the near future.  Indications were that the parties would memorialize the

deal which they had reached in principle.  That is not to say that such event was a

certainty, but Debtor's expectation is fairly characterized as reasonably likely or even

probable.  Based on those allegations, and giving the Debtor all favorable inferences,

the Court finds that Count VII sufficiently pleads the existence of a prospective

contractual relationship between the Debtor and Sovereign.

The Defendants' Intentions

        The Court turns next to what the Complaint says about Defendants' intentions

towards this inchoate arrangement between the Debtor and Sovereign.  It begins with ¶

104 which alleges that

>            [d]uring the months of May and June 2010, the Defendants
>            purposely interfered with the specific intent of destroying the
>            prospective contractual relationship between the Debtor and
>            Sovereign Bank for their own benefit and harming the
>            business relationship between the Debtor and Sovereign
>            Bank.

Complaint, ¶ 104.

        This allegation is conclusory, but what follows adds detail:

>            Specifically, in the event the Forbearance Agreement is
>            determined not to be a valid contract between the Debtor
>            and Sovereign Bank, the Defendants intentionally and

improperly interfered with the Debtor's performance of a
prospective contractual relationship with Sovereign Bank by
inducing or otherwise causing Sovereign Bank to negate the
existence of a valid contractual relationship by, among other
things:

> (i) Directing Sovereign Bank to instruct the Debtor
> that the Sovereign Loan was in default;

> (ii) Directing Sovereign Bank to instruct the Debtor
> that it never agreed to a forbearance with the Debtor;
> and

> (iii) Directing Sovereign Bank to send the Pa. R.C.P.
> 237.1 notice to the Debtor in connection with the
> Foreclosure Complaint.

Complaint, ¶ 105.  As the Debtor was already in default, having Sovereign restate that

fact does not seem particularly helpful to the Debtor for present purposes.  However,

directing Sovereign to disavow the existence of any agreement to forbear, when

Sovereign's alleged conduct suggests that it was forbearing for the three months

following the January 29 meeting arguably constitutes purposeful meddling.  The same

can be said for allegedly inducing Sovereign to  reactivate the foreclosure proceeding.

Privilege and Propriety

That takes the Court to question of whether the Complaint alleges a lack of

privilege on the part of the Defendants in acting as they allegedly did.  Paragraph 106

alleges that "the Defendants have no privilege or justification for their actions in

intentionally interfering with the prospective contractual relationship between the

Debtor and Sovereign Bank."  In the context of tortious interference with contractual

relation claims, "[t]he presence of a privilege is not an affirmative defense, rather, the

absence of such a privilege is an element of the cause of action which must be pleaded

and proven by the plaintiff." Bahleda v. Hankison Corporation, 228 Pa.Super. 153, 156,

323 A.2d 121, 122-123 (1974) (internal citations omitted).  The absence of privilege or

justification element of a claim for interference with contractual relations is closely

related to intent.  Adler Barish, 482 Pa. at 432, 393 A.2d at 1183 (internal citation

omitted).  However, ill-will is not an element of the cause of action.  Yaindl v. Ingersoll-

Rand Company Standard Pump-Aldrich Division, 281 Pa.Super. 560, 581 n.11, 422 A.2d

611, 622 n. 11 (1980), abrogated on other grounds, Yetter v. Ward Trucking Co., 401

Pa.Super. 467, 474, 585 A.2d 1022, 1026 (Pa.Super. 1991).

        This absence of privilege or justification on the part of the defendant is otherwise

understood as stating that the defendant's conduct was improper.  See American Bd of

Internal Medicine v. von Muller, 2011 WL 857337, at *5 (E.D.Pa.March 10, 2011).  This

requires an inquiry into the "mental and moral character of the defendant's conduct."

Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 159 (3d Cir.1988)

(internal citation omitted).  What is or is not privileged conduct in a given situation is

not susceptible of precise definition.  Adler Barish, 482 Pa. at 432-433, 393 A.2d at

1183-1184 (internal citation omitted).  When a defendant acts at least in part to protect

some legitimate concern which conflicts with an interest of the plaintiff, a line must be

drawn and the interests evaluated.  Advent Systems Ltd. v. Unisys Corporation, 925

F.2d 670, 673 (3d Cir.1991) (citing Glenn, supra, 441 Pa. At 482, 272 A.2d at 899).

The Supreme Court of Pennsylvania has approached this privilege issue by considering

whether the defendant's actions "are sanctioned by the 'rules of the game' which society has adopted." Adler Barish, 482 Pa. at 433-434, 393 A.2d at 1184. In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation is improper or not, consideration is given to the following factors:

> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and
>
> (g) the relations between the parties.

Adler Barish, 482 Pa. at 433, 393 A.2d at 1184 (quoting Restatement (Second) of Torts § 767). The general thrust of this multi-factor analysis "is whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another." Crivelli v. General Motors Corp., 215 F.3d 386, 395 (3d Cir.2000) (citing Adler Barish, supra, citing Restatement (Second) of Torts § 767, cmt. b). The nature of the actor's conduct is a chief factor in determining whether the conduct is improper. Id. (citing Restatement (Second) of Torts § 767, comment c)); Hospitality Assoc. of Lancaster, L.P. v. Lancaster

Land Development, L.P., 2008 WL 4444249, at **7-8 (E.D.Pa. September 30, 2008)

The Complaint charges 4th Walnut with wrongly interfering with the arrangement which the Debtor believes it had with Sovereign. Specifically, 4th Walnut is alleged to have directed Sovereign to disavow any agreement to forbear and to restart foreclosure proceedings. See ¶ 105 (ii) and (iii). The reasons were because 4th Walnut was about to purchase the loan and allegedly wanted it without any conditions. The Debtor maintains that it acted in good faith in making the regular net rent payments to Sovereign for the three months after it had defaulted on the loan. A balancing of the interests of 4th Walnut in buying the loan and the Debtor in relying on Sovereign's representations requires analysis of the good faith of 4th Walnut in acting as it did. There is nothing inherently wrong with an investor buying a bad loan. What is actionable is meddling with an alleged existing understanding between the borrower and the original lender in order to obtain the loan without strings attached. Such conduct, if proven, unquestionably would have adversely impacted the Debtor by cutting off its rights in the property when it believed a final deal was to be put down on paper. It is alleged that 4th Walnut actively made sure that did not happen by dictating a course of action to Sovereign that essentially reversed the course of how it had been dealing with the Debtor. As alleged, the extent of 4th Walnut 's involvement could be found as a matter of law unjustified. In sum, the Complaint does not portray 4th Walnut's actions as proper (i.e., privileged) in this context.

29

Damages

As to the sufficiency of the damages allegations in Count VII, the Defendants appear to have elided over this element and addressed whether attorney's fees and punitive damages may be claimed.  As to compensatory damages, the Court finds the Complaint to sufficiently set them forth.  At a minimum, the prospective contractual relationship which Debtor avers provides for reinstatement of the contract rate of interest, reinstatement of the maturity date, and waiver of late charges.  Taken as true for purposes of this motion only, those allegations constitute recoverable damages from 4th Walnut's alleged wrongful meddling.

Attorney's Fees

Under what is known as the American Rule, parties are generally not entitled to an award of counsel fees from an adverse party in the absence of express statutory authorization, a clear agreement between the parties, or the application of a clear exception.  James Corp. v. North Allegheny School Dist., 938 A.2d 474, 490 (Pa.Cmwlth.2007).  Title 42 of the Pennsylvania Statutes provides that a "reasonable counsel fee" may be assessed "for dilatory, obdurate or vexatious conduct during the pendency of a matter."  42 Pa.C.S.A. § 2503(7) (emphasis added).  Here, however, none of the objectionable conduct which the Complaint attributes to the Defendants is alleged to have occurred as part of the litigation.  For that reason, the Debtor has not pleaded an entitlement to the recovery of attorneys fees.  See Westmoreland County Indus. Development Authority v. Allegheny County Bd. of Property Assessment, Appeals

and Review, 723 A.2d 1084, 1086 (Pa.Cmwlth.1999) (explaining that bad conduct prior

to or following the pendency of case cannot form basis for an award of counsel fees).

Punitive Damages

The Defendants next challenge the Debtor's demand for punitive damages.  This

demand is limited to Counts VI and VII both of which are based in tort.  Under

Pennsylvania law, "punitive damages are appropriate for torts sounding in negligence

when the conduct goes beyond mere negligence and into the realm of behavior which is

willful, malicious, or so careless as to indicate wanton disregard for the rights of the

parties injured." Hutchinson v. Luddy, 582 Pa. 114, 120, 870 A.2d 766, 770 (2005).

Punitive damages should be awarded only where the defendant's conduct is so

outrageous as to demonstrate willful, wanton, or reckless conduct.  Feld v. Merriam,

506 Pa. 383, 395, 485 A.2d 742, 747-748 (1984); see also Restatement (Second) of

Torts § 908(2) ("Punitive damages may be awarded for conduct that is outrageous,

because of the defendant's evil motive or his reckless indifference to the rights of

others.")  To state a claim for punitive damages under Pennsylvania law, "the pleadings

must allege facts sufficient to demonstrate evil motive or reckless indifference to the

rights of others." Mulholland v. Gonzalez, 2008 WL 5273588, at *2 (E.D.Pa. December

18, 2008) quoting Great West Life Assurance Co. v. Levithan, 834 F.Supp. 858, 864

(E.D.Pa.1993).

Defendants maintain that the level of objectionable conduct with which they are

charged does not demonstrate an entitlement to punitive damages.  The Court agrees

31

that the alleged transgressions would not immediately appear to implicate punitive damages. However, the better course to dismissing the claim is to allow the pleadings to conform to the proofs. At this stage of the litigation, the Court cannot foreclose the possibility that the alleged wrongful conduct may warrant an exemplary award. In other words, taking all the allegations as true, and giving the Debtors the benefit of the doubt where things are unclear, it would be premature to dismiss the claim for punitive damages given that serious wrongful conduct is sufficiently alleged. See Young v. Westfall, 2007 WL 675182, at *2 (M.D.Pa. March 1, 2007) (noting that dismissal of a punitive damages claim at the pleading state is premature because even though "facts may later prove at most that defendants were merely negligent, discovery is necessary to help make this determination."); Farrell v. County of Montgomery, 2006 WL 166519, at *2 (E.D.Pa. January 18, 2006) (denying motion to dismiss punitive damages claim where no discovery had been taken to evaluate Defendant's state of mind). Accordingly, the request to dismiss the demand for punitive damages will be denied at this time.

Role of Ivy Services

Defendants' final challenge involves the defendant Ivy Realty Services, LLC (Ivy Services). Along with the other two defendants, that entity is charged with intentional interference with contract in Counts VI or VII. Defendants seek dismissal of Ivy Services from this action altogether. They maintain that the Complaint neither specifically identifies what wrongful action Ivy Services took nor explains its connection

32

to the co-defendants.  4th Walnut's Brief, 39.  Debtor responds by referring to Exhibit G

attached to the Complaint.  Debtor's Brief, 64-65.  That exhibit is a letter of intent from

Ivy Equities to the an entity known as the Flynn Company to purchase the Sovereign

loan.  The letter explains that the would-be purchaser of the loan would be joint

venture between affiliates of Ivy Services and ABCO Properties.  Add to this the factual

background which is incorporated by reference, Plaintiff concludes, and a claim against

Ivy Services has been sufficiently stated.  Id.  The Court agrees.

Defendants are correct that the Complaint fails to state what Ivy Services'

connection is with the other defendants or even the Plaintiff.  It is described in ¶ 7 only

as a limited liability company, but what its business purpose is, or what connection it

has with any other party to this litigation, is not stated.  It is mentioned in ¶ 37 as a

possible purchaser of the Sovereign loan but it would be 4th Walnut who bought that

note.  From that point in the narrative, Ivy Services is never specifically mentioned

again.  It finds itself among the Defendants in Count VII who "intentionally and

improperly interfering with Debtor's performance of a prospective contractual

relationship  with Sovereign."  ¶ 105.  Yet, exactly what Ivy Services is remains unclear.

To that extent, the Court concurs with Defendants' reading of the allegations against

Ivy Services.

That being said, the Court does not agree with Defendants' contention that the

Complaint fails to allege what wrongful action Ivy Services took with regard to the

Debtor and Sovereign.  Paragraph 105 specifically alleges that the Defendants:

> (i)    Directed Sovereign Bank to instruct the Debtor that
>         the Sovereign Loan was in default;
>
> (ii)   Directed Sovereign Bank to instruct the Debtor that it
>         never agreed to a forbearance with the Debtor; and
>
> (iii)  Directed Sovereign Bank to send the [Rule] 237.1
>        notice the Debtor in connection with the Foreclosure
>        Complaint.

Complaint, ¶ 105.  Ivy Services is alleged to be one of the Defendants who did these

things which adversely harmed Debtor's prospects of reaching an accord with

Sovereign.  To be sure, these are not the most specific of charges.  The Complaint, for

example, does not inform when these "instructions" were given.  Neither does it

mention how.  The fleshing out (or failure to flesh out) of such allegations as to Ivy

Services is better left to discovery.  At this stage, where a plaintiff is required only to

adequately inform—even under the recently heightened standard as enunciated in

Twombly and Iqbal—the claims against Ivy Services are sufficient as a matter of law.

Conclusion

        For the foregoing reasons, the Court finds that Counts I through VI must be

dismissed for failure to state a claim upon which relief may be granted.  The Motion will

be denied as to Count VII, which states a claim against all of the Defendants.  The

claim for attorney's fee, however, will be dismissed; while the claim for punitive

damages will not.

An appropriate order follows.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>March 31, 2011</u>