## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **400 WALNUT ASSOCIATES, L.P., et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | **No. 14-mc-145** |
| **v.** | : | |
| | : | |
| **4TH WALNUT ASSOCIATES, L.P., et al.,** | : | **FILED** JAN 2 ? 2015 |
| **Defendants.** | : | |

**MCHUGH, J.**                                                    **JANUARY 28, 2015**

### MEMORANDUM

Defendants 4th Walnut Associates, L.P. ("4th Walnut"), Ivy Realty LII, LLC ("Ivy Realty") and Ivy Realty Services, LLC ("Ivy Services") move for withdrawal of the bankruptcy reference in the above-captioned adversary proceeding pursuant to 28 U.S.C. § 157(d) and Rule 5011(a) of the Federal Rules of Bankruptcy Procedure. Having reviewed the extensive history of core and non-core proceedings adjudicated by Bankruptcy Judge Stephen Raslavich and upon consideration of the relevant factors recognized in this Circuit, I conclude that Defendants have not met their burden for establishing cause to withdraw the underlying bankruptcy proceedings to district court. Accordingly, I will deny the Motion.

### I.    Background

The underlying bankruptcy case dates back to July 23, 2010, when 400 Walnut Associates, L.P. ("Debtor") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. The main asset involved was Debtor's building located at 4th and Walnut Street in Philadelphia. 4th Walnut filed a proof of claim against the Debtor's bankruptcy estate on October 15, 2010 (the "4th Walnut Claim"). Judge Raslavich has presided over this case since its inception in Bankruptcy Court, including administering Debtor's bankruptcy case,

1

ENTERED

JAN 2 9 2015

CLERK OF COURT

confirming its Chapter 11 Plan, and issuing five substantive written opinions, dated February 22,

2011,[1] March 31, 2011,[2] October 20, 2011,[3] July 11, 2012,[4] and March 12, 2014,[5] respectively.

These opinions are noteworthy for their detail and careful analysis.

Despite the lengthy history of this case, the parties agree that it is still in its early stages

of litigation, as discovery has yet to be completed. Debtor maintains that considerable pretrial

work will need to be undertaken, which the Bankruptcy Court "is more than capable of

overseeing." Plaintiffs' Opposition Brief at 2.

Debtor and John Turchi (together, "Plaintiffs") seek more than $6.8 million in the

underlying proceeding from 4th Walnut and Ivy Services (collectively, "Defendants") and

Sovereign Bank ("Sovereign"),[6] 4th Walnut's predecessor-in-interest. Plaintiffs allege that

Defendants and Sovereign engaged in tortious conduct and repudiated a forbearance agreement

that was reached between Debtor and Sovereign on January 29, 2010. Plaintiffs further claim

that Sovereign "fraudulently induced Plaintiffs to enter into the Forbearance Agreement, in

reliance upon which Plaintiffs performed for more than five months, materially changing their

business operations and banking relationships, and delaying filing for bankruptcy for the Bank's

benefit." Plaintiffs' Opposition Brief at 3.

The underlying adversary proceeding commenced in late 2010. Debtor originally filed an

eight count complaint, which was largely dismissed by the Bankruptcy Court for failure to state a

claim. However, the Bankruptcy Court later sanctioned Sovereign for discovery misconduct, as

---

[1] In re 400 Walnut Associates LP., 454 B.R. 601 (Bankr. E.D. Pa. 2011).

[2] In re 400 Walnut Associates, L.P., 454 B.R. 60 (Bankr. E.D. Pa. 2011).

[3] In re 400 Walnut Associates, L.P., 461 B.R. 308 (Bankr. E.D. Pa. 2011) rev'd and remanded, 473 B.R. 603 (E.D.
Pa. 2012).

[4] In re 400 Walnut Associates, L.P., 475 B.R. 217 (Bankr. E.D. Pa. 2012).

[5] In re 400 Walnut Associates, L.P., 506 B.R. 645 (Bankr. E.D. Pa. 2014).

[6] Sovereign did not join in the Motion for Withdrawal of the Bankruptcy Reference, but rather moved for Judgment
on the Pleadings in the underlying action based on an alleged lack of subject matter jurisdiction, currently pending
before the Bankruptcy Court.

it wrongfully withheld key documents in response to Debtor's subpoenas, which were belatedly produced via Court Order. Using these key " 'smoking gun' type documents,"[7] Plaintiffs filed an Amended Complaint against Defendants and Sovereign, asserting eight causes of action, predominantly consisting of state law claims, including breach of contract, conspiracy, tortious interference with contractual relations, fraudulent and negligent misrepresentation, aiding and abetting fraud, as well as an objection to the 4th Walnut Claim in the bankruptcy case. Defendants and Sovereign initially responded to the Amended Complaint by filing motions to dismiss in Bankruptcy Court. On March 12, 2014, Judge Raslavich denied both motions in a comprehensive opinion. See In re 400 Walnut Associates, L.P., 506 B.R. at 653–671. Defendants answered the Amended Complaint on May 5, 2014 and filed the instant Motion for Withdrawal of Reference on June 9, 2014. Notably, Defendants have not demanded a jury trial.

## II.    Discussion

### a.  Legal Framework

Pursuant to 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section [to the Bankruptcy Court] . . . for cause shown." Although there is a presumption that bankruptcy proceedings should be heard by bankruptcy judges, "the presumption may be overcome by an overriding interest based on a finding by the Court that the withdrawal of reference is essential to preserve a higher interest

---

[7] In In re 400 Walnut Associates, L.P., 475 B.R. at 231–32, Judge Raslavich explained the history and significance of the "smoking gun" documents:

> The documents which Sovereign failed to produce in response to the Subpoenas Duces Tecum are directly relevant, proverbial "smoking-gun" type documents which were created within eighteen months or less from the date upon which the Debtor served the Second Subpoena Duces Tecum on Sovereign. With minimal effort, Sovereign should have been able to locate the documents in a timely manner and prepare a privilege log describing them. Sovereign's failure to do so, under the circumstances herein, is unquestionably a wilful, wrongful and flagrant violation of the discovery rules. Had the Debtor not been as persistent as it was, the existence of the documents at issue, in all likelihood, would have never been disclosed.

Although the discovery misconduct incident did not directly involve Defendants, it does help explain the long history of this case and serves as a small example of the type of knowledge and insight Judge Raslavich has gained by presiding over these proceedings since 2010.

3

than that recognized by Congress." In re Ramex Int'l, Inc., 91 B.R. 313, 315 (E.D. Pa. 1988)

(internal citations and quotations omitted).   The movant bears the burden to establish "cause."

In re Am. Capital Equip., LLC, 325 B.R. 372, 375 (W.D. Pa. 2005).

The Third Circuit has explained that although there are no clear requirements set out via

statute to establish cause for withdrawal, certain factors have developed through federal case

law. In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990). Relevant goals and factors include, but

are not limited to: promoting uniformity in bankruptcy administration; utilizing the expertise of

bankruptcy judges; reducing forum shopping and confusion; fostering the economical use of

resources; the extent of a particular court's knowledge of the facts; the timing of the request for

withdrawal; whether a proceeding is core or non-core; and whether a jury trial has been

requested. See id.; In re Velocita Corp., 169 F. App'x 712, 716–17 (3d Cir. 2006); Feldman v.

ABN AMRO Mortgage Grp. Inc., 515 B.R. 443, 446 (E.D. Pa. 2014); In re Am. Capital Equip.,

LLC, 325 B.R. at 375; In re Ramex Int'l, Inc., 91 B.R. at 315.

Bankruptcy judges are vested with authority to enter final judgments on matters within

their core jurisdiction, as set out in 28 U.S.C. § 157.  For non-core matters that are otherwise

related to core proceedings, bankruptcy judges are limited to issuing proposed findings of fact

and conclusions of law to a district court for consideration.[8] Feldman, 515 B.R. at 446

(discussing 28 U.S.C. § 157).  "[A]ny final order or judgment shall be entered by the district

judge after considering the bankruptcy judge's proposed findings and conclusions and after

reviewing de novo those matters to which any party has timely and specifically objected." 28

U.S.C. § 157(c)(1).  In addition, "a bankruptcy court cannot conduct a jury trial in a non-core

---

[8] Parties to bankruptcy actions have the option of consenting to jurisdiction.  28 U.S.C. § 157(c)(2).  Consent empowers bankruptcy judges to "hear and determine" core and non-core proceedings, subject to appellate review of a district court, pursuant to 28 U.S.C. § 158.  Here, however, the parties have not consented to the Bankruptcy Court's entry of final judgment in non-core proceedings.

4

proceeding," which may weigh in favor of withdrawing the reference in cases where a jury trial
has been demanded. Beard v. Braunstein, 914 F.2d 434, 443 (3d Cir. 1990).

　　Plaintiffs stress the importance of Debtor's Amended Plan of Reorganization in the
underlying bankruptcy matter, as it includes "detailed provisions" about the instant adversary
proceeding. The Plan "specifically provides that the Bankruptcy Court retains exclusive
jurisdiction over 'any and all adversary proceedings . . . pending on the Effective Date or that
may be instituted after the Effective Date.' " Plaintiffs' Opposition Brief at 2. Defendants,
however, counter that minimal legal significance should be attributed to this language, as "it is
well-settled that a Plan may not delegate unlimited authority to a bankruptcy judge."
Defendants' Reply Brief at 7 (citing FTI Consulting, Inc. v. Merit Mgmt. Grp., LP, No. 11 CV
7670, 2014 WL 3858365, at *5 (N.D. Ill. Aug. 5, 2014)).[9]

### b. Have the Movants Established Cause for Withdrawal?

　　Defendants argue that the case should be withdrawn because the majority of the claims
and cross claims pending in bankruptcy court are non-core, and the other factors of judicial
economy, full and complete resolution of claims, and the importance of consistent rulings weigh
in favor of withdrawal. Because Debtor's Chapter 11 Plan was confirmed over two years ago,
Defendants assert that withdrawing the reference will not cause any delay to the bankruptcy
process. Defendants further maintain withdrawal is especially warranted here because any
proposed findings of fact and conclusions of law entered by the Bankruptcy Court must be
submitted to the District Court for *de novo* review under 28 U.S.C. § 157(c)(1), creating

---

[9] Because the relevant Third Circuit factors overwhelmingly weigh in favor of denying Defendants' Motion, I do not
need to reach a conclusion regarding the legal significance of the relevant portions of Debtor's Amended Plan of
Reorganization.

unnecessary duplication of effort if the adversary proceedings are not withdrawn.[10]  Defendants'

Brief in Support of Their Motion at 9.  Otherwise, Defendants aver that two courts will have "to

expend the resources to become familiar with the complicated and voluminous facts attendant to

the issues raised in the adversary proceeding."  Id.

Plaintiffs, however, contend that the above factors strongly weigh in favor of denying the

instant Motion.  While Plaintiffs concede that the proceedings largely consist of non-core claims,

they argue that this fact alone is not enough to establish cause.  "Proceedings should not be

withdrawn for the sole reason that they are non-core.  The 'cause shown' requirement in section

157(d) creates a '*presumption that Congress intended to have bankruptcy proceedings*

*adjudicated in bankruptcy court* unless rebutted by a contravening policy.' "  Katzev v.

Dunavant, No. CIV. A. 97-3941, 1997 WL 786461, at *5 (E.D. Pa. Nov. 20, 1997) (quoting

Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp., 106 B.R. 367, 371 (D. Del. 1989)).

Although Defendants would be entitled to a jury trial had they demanded one—which they did

not—Plaintiffs argue that there is no statutory right to a bench trial in district court for non-core

proceedings.[11]  That is, Congress was clear and unambiguous in drafting 28 U.S.C. § 157(c)(1);

Bankruptcy Courts are empowered to submit proposed findings and conclusions of law in non-

core proceedings, for review by the district court.[12]

---

[10] Defendants also argue that the Bankruptcy Court lacks jurisdiction to decide claims asserted by newly added
Plaintiff Turchi, but Plaintiffs persuasively counter that any challenges to the Bankruptcy Court's jurisdiction should
be properly raised in the underlying bankruptcy proceedings.

[11] Plaintiffs also argue that even had Defendants filed a jury demand, such a demand would not be sufficient to
establish cause for discretionary withdrawal.  Indeed, assertion of a "Seventh Amendment right to a jury trial,
coupled with a refusal to consent to such trial before the Bankruptcy Court, is not of itself sufficient cause for
discretionary withdrawal.  It is well-settled that a district court is not compelled to withdraw a reference simply
because a party is entitled to a jury trial."  Pennsylvania Acad. of Music v. Regitz, No. 10-14377, 2010 WL
4909952, at *2 (E.D. Pa. Nov. 30, 2010); In re Am. Classic Voyages Co., 337 B.R. 509, 511 (D. Del. 2006).
Moreover, as most matters are resolved prior to trial, "[c]ourts have recognized that it serves the interests of judicial
economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters,
even if the action will ultimately be transferred to a district court for trial [if not resolved]."  Id.

[12] See Stern v. Marshall, 131 S. Ct. 2594, 2604 (2011) ("When a bankruptcy judge determines that a referred
'proceeding ... is not a core proceeding but ... is otherwise related to a case under title 11,' the judge may only

6

Moreover, Plaintiffs emphasize that the Bankruptcy Court is already familiar with the history of this litigation—with the parties, the facts, and the specific claims asserted in the Amended Complaint. In the process of administering the bankruptcy case and drafting five substantive opinions since the commencement of adversary proceedings in 2010, I have no doubt that the Bankruptcy Court has developed an impressive command of the factual background and legal issues presented in the underlying action. It strikes me that the more than four year history in Bankruptcy Court alone might be enough to defeat withdrawal, as no district court could be armed with the knowledge and insight earned over literally years of experience in overseeing this case.

Thus, withdrawing the reference here would not effectively prevent an unnecessary duplication of effort as suggested by Defendants, but rather would be a waste of the Bankruptcy Court's familiarity with the underlying facts and legal issues. See In re Big V Holding Corp., No. 00-04372(RTL), 2002 WL 1482392, at *4 (D. Del. July 11, 2002) ("[T]the Bankruptcy Court has already expended invaluable time and energy familiarizing itself with the facts and issues surrounding the [adversary proceeding]. Considerations of judicial economy thus weigh in favor of leaving the case with the Bankruptcy Court."); Nw. Inst. of Psychiatry, Inc. v. Travelers Indem. Co., 272 B.R. 104, 109 (E.D. Pa. 2001) ("The bankruptcy court is familiar with the parties, the factual background of the case and the legal issues involved. Therefore, this court finds no reason to disturb the present course and it declines to withdraw the reference as judicial economy will be served by allowing the adversary action to remain in bankruptcy court."). Accordingly, I agree with Plaintiffs that the overarching goals of judicial efficiency,

---

'submit proposed findings of fact and conclusions of law to the district court.' § 157(c)(1). It is the district court that enters final judgment in such cases after reviewing *de novo* any matter to which a party objects.").

uniformity of administration and appropriate allocation of resources contemplated by In re Pruitt
and its progeny weigh heavily in favor of denying the Motion.

Despite the long history of this case, discovery has yet to be underway, and I also agree
with Plaintiffs that Judge Raslavich is best positioned to preside over discovery and other pretrial
matters. Such an arrangement is similar to that of a magistrate presiding over discovery. See In
re Big V Holding Corp., 2002 WL 1482392, at *6 ("[T]he bankruptcy judge can serve basically
the same function as a magistrate."). As explained above, it seems fairly axiomatic that the
intimate familiarity of the Bankruptcy Court here will allow for maximum efficiency in future
proceedings. Similarly, the parties' resources will be utilized most economically by continuing
in the same forum.

The fact that Defendants have not requested a jury trial also weighs in favor of denying
the Motion. Defendants will still be entitled to *de novo* review of all non-core proceedings by a
district court, should they demand it. However, the litigation will be streamlined, and a district
court judge reviewing proposed findings and conclusions of law will have the benefit of the
Bankruptcy Court's expertise in this matter.

Finally, the concern of forum shopping strongly supports denial of the Motion. E.g., In re
Formica Corp., 305 B.R. 147, 151 (S.D.N.Y. 2004) ("courts should employ withdrawal
'judiciously in order to prevent it from becoming just another litigation tactic for parties eager to
find a way out of bankruptcy court.' "). Plaintiffs highlight the timing of the request for
withdrawal, as Defendants first moved to dismiss the Amended Complaint in its entirety, and
only requested withdrawal upon receiving the Bankruptcy Court's adverse ruling. Plaintiffs
conclude that "it is patently obvious that the Motion stems at least in part from a desire for a
more friendly forum." Plaintiffs' Opposition Brief at 14. Extrapolating further, Plaintiffs argue

8

that allowing Defendants to withdraw the reference here simply because the Bankruptcy Court is not empowered to enter final judgments on non-core claims would promote forum shopping and create bad policy for future litigants.

Defendants attempt to rebut Plaintiffs' point about forum shopping by stating that the district court is "the expert in the federal system at resolving common law claims" and has the constitutional authority to enter a final judgment on all claims involved in the adversary proceeding. Defendants' Brief in Support of Their Motion at 9. Defendants conclude that withdrawing the reference here would be an exercise in the proper "division of labor" between district and bankruptcy courts. While Defendants are certainly not wrong, their arguments on this point do not speak to the overarching concern that by relaxing the legal standard for 28 U.S.C. § 157(d) cause to withdraw, widespread forum shopping would be encouraged.

Therefore, even if Defendants did not file the instant Motion in response to an unfavorable ruling by the Bankruptcy Court—and I am inclined to agree with Plaintiffs that the timing in this regard is highly suspect—my foregoing analysis of the relevant factors makes clear that Defendants have not carried their burden to establish cause for withdrawal. Consequently, even if I give Defendants the benefit of the doubt, and assume their Motion truly resulted from seeking the (presumed) expertise and finality available in district court, in thinking more broadly about the future implications of my decision, this factor too weighs in favor of denying Defendants' Motion.

### III.    Conclusion

Despite the prominence of non-core claims in this adversary proceeding, on balance, the

relevant factors discussed above weigh in favor of allowing this matter to continue in the

Bankruptcy Court.   Defendants' Motion is therefore denied.   An appropriate Order follows.


                                            _____ /s/ Gerald Austin McHugh
                                            United States District Court Judge